# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COQUI TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-777-CFC-SRF |
| | ) | |
| GYFT, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| COQUI TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-778-CFC-SRF |
| | ) | |
| TRANSACTION WIRELESS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in these related patent infringement actions are the motions to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by defendants Gyft, Inc. and Transaction Wireless, Inc. (collectively "Defendants"). (C.A. No. 17-777-JFB-SRF, D.I. 9; C.A. No. 17-778-JFB-SRF, D.I. 9)[1] For the following reasons, I recommend that the court grant the motions to dismiss.

---

[1] For purposes of this Report and Recommendation, all citations to the docket will refer to Civil Action No. 17-777-JFB-SRF, unless otherwise noted.

## II. BACKGROUND

Coqui filed these actions on June 16, 2017, claiming the infringement of United States Patent No. 7,580,864 ("the '864 patent"). (D.I. 1) Coqui accuses Defendants of infringing the '864 patent by "directly or through intermediaries, making, using, selling, and/or offering for sale apparatuses and systems, *i.e.*, Gyft e-Gift Cards (the "Accused Instrumentality"), covered by one or more claims of the '864 Patent." (*Id.* at ¶ 10) Coqui is the owner by assignment of the '864 patent titled "Method for Circulating an Electronic Gift Certificate in Online and Offline System," which claims a method of circulating electronic gift certificates and managing sales of electronic gift certificates according to requests made through wired and wireless networks. (*Id.* at ¶ 6; Ex. A at Abstract) Specifically, the disclosed system and method operate by

> receiving a user's purchase request from the communication terminal; checking a settlement state of the electronic gift certificate bought by the user; settling the electronic gift certificate bought by the user, and issuing the bought electronic gift certificate to the user, when the user requests settlement; storing the issued gift certificate information in the gift certificate database; and notifying the user of the gift certificate purchase particulars in a massage format.

(*Id.*, Ex. A at Abstract) By "unifying an electronic gift certificate management system and a mobile communication system into a single system," the invention "simplif[ies] an electronic gift certificate circulation system and allow[s] the electronic gift certificates to be quickly and accurately purchased, gifted, and used." ('864 patent, col. 2:33-37)

## III. LEGAL STANDARD

Defendants move to dismiss the pending action pursuant to Rule 12(b)(6), which permits a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most

favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008). According to Defendants, Coqui's complaint fails to state a claim because the patents-in-suit are ineligible for patent protection under 35 U.S.C. § 101.

Section 101 provides that patentable subject matter extends to four broad categories, including "new and useful process[es], machine[s], manufacture, or composition[s] of matter." 35 U.S.C. § 101; *see also Bilski v. Kappos*, 561 U.S. 593, 601 (2010) ("*Bilski II*"); *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). The Supreme Court recognizes three exceptions to the statutory subject matter eligibility requirements: "laws of nature, physical phenomena, and abstract ideas." *Bilski II*, 561 U.S. at 601. In this regard, the Supreme Court has held that "[t]he concepts covered by these exceptions are 'part of the storehouse of knowledge of all men . . . free to all men and reserved exclusively to none.'" *Id.* at 602 (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)). At issue in the present case is the third category pertaining to abstract ideas, which "embodies the longstanding rule that an idea of itself is not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (internal quotations omitted).

In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012), the Supreme Court articulated a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. In accordance with the first step of the *Alice* test, the court must determine whether the claims at issue are directed to a patent-ineligible concept. *See id.* If so, the court must turn to the second step, under which the court must identify an "'inventive concept'—*i.e.*, an element or combination of elements that is

3

sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* (certain quotation marks omitted). The two steps are "plainly related" and "involve overlapping scrutiny of the content of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

At step 1, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter."). However, "courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (internal quotation marks omitted). "Whether at step one or step two of the *Alice* test, in determining the patentability of a method, a court must look to the claims as an ordered combination, without ignoring the requirements of the individual steps." *Enfish, LLC v. Microsoft*, 822 F.3d 1327, 1338 (Fed. Cir. 2016).

At step 2, the Federal Circuit instructs courts to "look to both the claim as a whole and the individual claim elements to determine whether the claims contain an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *McRO*, 837 F.3d at 1312 (internal brackets and quotation marks omitted). Under the step 2 inquiry, the court must consider whether claim elements "simply recite 'well-understood, routine, conventional

activit[ies].'" *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2359). "Simply appending conventional steps, specified at a high level of generality, [is] not enough to supply an inventive concept." *Alice*, 134 S. Ct. at 2357 (internal quotation marks omitted).

The Federal Circuit looks to the claims as well as the specification in performing the "inventive concept" inquiry. *See Affinity Labs of Texas v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016) ("[N]either the claim nor the specification reveals any concrete way of employing a customized user interface."). "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *Bascom*, 827 F.3d at 1350. In *Bascom*, the Federal Circuit held that "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself," but nonetheless determined that the patent adequately alleged an ordered combination of these limitations to be patent-eligible under step 2 at the pleading stage. *Id.* at 1349.

The "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention" under step 2. *Alice*, 134 S. Ct. at 2358. "Given the ubiquity of computers . . . wholly generic computer implementation is not generally the sort of additional feature that provides any practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself." *Id.* (internal citation and quotation marks omitted). For the second step of the *Alice* framework, the machine-or-transformation test may provide a "useful clue," although it is not determinative. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) (citing *Bilski II*, 561 U.S. at 604 and *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1278 (Fed. Cir. 2012)). A claimed process

can be patent-eligible under § 101 consistent with the machine-or-transformation test if it "uses a particular machine or apparatus" and does not "pre-empt[2] uses of the principle that do not also use the specified machine or apparatus in the manner claimed." *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2010), *aff'd sub nom., Bilski v. Kappos*, 561 U.S. 593 (2010).

Patent eligibility under § 101 is a question of law suitable for resolution on a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 610 (Fed. Cir. 2016) (applying regional circuit law to the de novo review of a district court's patent eligibility determination under § 101 on a Rule 12(b)(6) motion to dismiss). However, the Federal Circuit recently emphasized that, "like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact[]" that goes beyond what was simply known in the prior art. *Berkheimer v. HP Inc.*, 881

---

[2] At both steps 1 and 2 of the *Alice* inquiry, the Federal Circuit considers the issue of preemption to determine whether a patent is not directed to a specific invention and instead would monopolize "the basic tools of scientific and technological work," thereby "imped[ing] innovation more than it would tend to promote it" and "thwarting the primary object of the patent laws." *Alice*, 134 S. Ct. at 2354; *see also McRO*, 837 F.3d at 1315 (applying the doctrine of preemption and concluding that a claim was patent-eligible at step 1); *Bascom*, 827 F.3d at 1350 (applying the doctrine of preemption and concluding that a claim was patent-eligible at step 2). "[T]he focus of preemption goes hand-in-hand with the inventive concept requirement." *Jedi Techs., Inc. v. Spark Networks, Inc.*, C.A. No. 16-1055-GMS, 2017 WL 3315279, at *8 n.2 (D. Del. Aug. 3, 2017) (quoting *Tenon & Groove, LLC v. Plusgrade S.E.C.*, C.A. No. 12-1118-GMS, 2015 WL 1133213, at *4 (D. Del. Mar. 11, 2015)). However, "the absence of complete preemption does not demonstrate patent eligibility." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015).

F.3d 1360, 1368 (Fed. Cir. 2018). On a motion to dismiss, this question of fact, like all questions of fact, must be resolved in the plaintiff's favor. *Aatrix Software, Inc.*, 882 F.3d at 1128.

IV. **DISCUSSION**

A. *Alice* **Step 1**

Applying the first step of the *Alice* framework to the asserted claims, the court concludes that independent claim 1 of the '864 patent[3] is directed to the abstract idea of selling, gifting, and using electronic gift certificates over a network, which is a longstanding commercial practice. ('864 patent, cols. 10:50-11:12) In support of their motion to dismiss, Defendants argue that the '864 patent is an abstract idea directed to the longstanding commercial practice of selling, gifting and using gift certificates. (D.I. 10 at 10) According to Defendants, barcodes are generic computing technology, and the security improvements established by the authentication process in the '864 patent are abstract ideas. (D.I. 15 at 2-3)

Coqui argues that claims 1 through 5 of the '864 patent represent patent eligible material unique to the Internet directed to "a concrete method of purchasing and using an electronic gift card–in the form of a barcode received via a MMS [Multimedia Messaging Service] message and displayed on a display device with Internet access–as well as tracking the usage and gifting history of the particular electronic gift card." (D.I. 14 at 10) In addition, Coqui argues that the additional security provided by the patented method's authentication of gift certificate membership and usage histories is not an established commercial practice defeating Defendants' abstract idea allegation. (*Id.* at 11)

---

[3] Asserted claims 2-5 depend from claim 1 and are generally directed to the same subject matter. The additional limitations in the dependent claims do not depart from the focus of the independent claim.

7

The claims of the '864 patent relate to the abstract idea of selling, gifting, and using an electronic gift certificate. The preamble of claim 1 identifies "[a] gift certificate service system for managing sales, gifting, and usage of electronic gift certificates according to a request by a user's communication terminal through a wired network, wireless network, or both." ('864 patent, col. 10:50-53) Claim 1 subsequently lists the following elements: (1) a gift certificate service server; (2) a database; and (3) a network server. (*Id.*, cols. 10:54-11:4) Each of the subsequent claim 1 limitations refer back to either "managing the purchase, gifting and usage operations" or the "gifting . . . or usage history" of electronic gift certificates. (*Id.*, cols. 10:50-11:12) Coqui agrees that the invention describes a method of "purchasing and using an electronic gift card–in the form of a barcode received via a MMS message and displayed on a display device with Internet access–as well as tracking the usage and gifting history of the particular electronic gift card." (D.I. 14 at 10)

Dependent claims 2 through 5 refer back to the same material as independent claim 1. (*Id.*, cols. 10:50-11:64) Claim 2 describes a means for the certificate user and issuer to check the settlement status of a particular purchase request, settle the purchase request, store the related purchase information in a database, and notify the parties of the same. (*Id.*, col. 11:13-25) Claim 3 describes a means for the certificate user and issuer to communicate a gifting request, check the existence state of the gift certificate, transfer the gift certificate, update the certificate user, store new user information, and notify the parties in message format of the changes. (*Id.*, col. 11:26-44) Similarly, claim 4 describes a means for receiving a usage request, inquiring and determining the existence state, settling and determining the possibility of price settlement, processing the settlement, storing the settlement information, and notifying the user of the

information. (*Id.*, col. 11:45-61) Finally, dependent claim 5 limits independent claim 1 by requiring that "the history of the gift certificates is classified by types, users, and prices . . . ." (*Id.*, col. 11:62-64)

The use of gift certificates is a longstanding, fundamental economic practice. The present record includes a newspaper advertisement for gift certificates dated December 3, 1900. (D.I. 10, Ex. 1 at 5) A gift certificate is defined in the '864 patent as "a bill that has an exchangeable value so that a user may give it to a shop to make a purchase or get a discount on a desired product." ('864 patent, col. 1:31-33) As acknowledged in the '864 patent specification, electronic gift certificate systems were used by clients in conjunction with the "Internet, a telephone, a cell phone, an ATM, or a credit card checker" before the '864 patent. (*Id.*, col. 1:54-60)

Applying the Internet and computer components to the commercial practice of electronic gift certificates does not preclude a finding that the '864 patent is abstract. *See, e.g., Alice,* 134 S. Ct. at 2347 (methods and systems for mitigating settlement risk were directed to an abstract idea); *Cybersource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366, 1370, 1376 (Fed. Cir. 2011) (method for verifying the validity of credit card transactions over the Internet to prevent fraud was directed to an abstract idea); *buySAFE, Inc. v. Google, Inc.,* 765 F.3d 709, 712, 714 (Fed. Cir. 2014) (computer and Internet based method for guaranteeing an online transaction was directed to an abstract idea). The claims of the '864 patent do not improve the functioning of a computer or any of the other components involved in the method. Instead, the asserted claims add conventional computer components to well-known business practices. *See Enfish,* 822 F.3d at 1338. In addition, the claim 5 limitation of classifying the gift certificate history by "types,

users, and prices" is an abstract idea because humans have performed the functions of "data collection, recognition, and storage" for a long time. ('864 patent, col. 1:12-15); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014); *see also Shortridge v. Foundation Const. Payroll Serv., LLC*, 655 Fed. Appx. 848 (Fed. Cir. 2016) (inventor conceded that cataloging labor data was an abstract idea).

The '864 patent's alleged security benefits do not confer patent eligibility because the authentication of a gift certificate transaction could be performed by a human with a pen and paper. *See, e.g., Cybersource*, 654 F.3d at 1376 (a method for authenticating credit card transactions was abstract because it could be performed by a human); *Planet Bingo, LLC v. VKGS, LLC*, 576 F. App'x 1005, 1008 (Fed. Cir. 2014) (Patents directed to computer aided management of bingo games could be performed by a human and were "directed to the abstract idea of 'solving a tampering problem and also minimizing other security risks' during bingo ticket purchases."). In *Cybersource*, the Federal Circuit determined that "the general approach of obtaining information about credit card transactions using an Internet address and then using that information in some undefined manner to determine if the credit card transaction is valid" was not patent-eligible. *Cybersource*, 654 F.3d at 1376. The court concluded that "a method for verifying the validity of a credit card transaction over the Internet" was an abstract idea. *Id.* at 1373. Similarly, the preferred embodiment of the '864 patent describes a database that "stores a gifting history and usage history as well as a history of gift certificates bought by the client to authenticate" that the "client's gifting or usage of the electronic gift certificate is fair." ('864 patent, col. 5:3-7) Such authentication could be performed using a pen and paper; therefore, the

'864 patent is directed to an abstract idea despite the added security benefits that might result from using a computer to perform authentication. *See Cybersource*, 654 F.3d at 1371.

In addition, authenticating and verifying the balance of the electronic gift certificate is abstract because it relates to the "organizing of human activity." *See, e.g., Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (a patent applying the Internet to budgeting for "tracking financial transactions to determine whether they exceed a pre-set spending limit" was an abstract "method[] of organizing human activity"); *Secured Mail Solutions LLC v. Universal Wilde*, 873 F.3d 905, 907 (Fed. Cir. 2017) (a method for verifying the authenticity of a mail object was abstract). Applying the Internet and a communication network to budgeting or spending limits does not make the '864 patent any less abstract. *See Intellectual Ventures I*, 792 F.3d at 1367.

Coqui contends that the '864 patent is similar to the patent at issue in the Federal Circuit's decision in *ContentGuard Holdings, Inc. v. Amazon.com, Inc.* (D.I. 14 at 11-12) The '864 patent is distinguishable from the patent eligible material in *ContentGuard*. *See ContentGuard*, 142 F. Supp. 3d 512 (The patents at issue were "generally directed toward systems and methods for controlling the use and distribution of digital works in accordance with 'usage rights' through the use of 'trusted' systems."). The *ContentGuard* court held that the patents were not abstract because they were "directed toward patent-eligible methods and systems of managing digital rights using specific and non-generic 'trusted' devices and systems." *Id.* at 515. The court construed the word 'trusted' to require "that three types of 'integrities'– physical, communication, and behavioral – be maintained." *Id.* at 512. In contrast, the '864

patent does not relate to specific or non-generic devices. The '864 patent relates to any "display device with Internet access." (D.I. 10 at 10)

Because the '864 patent is directed to the abstract idea of selling, gifting, and using electronic gift certificates, the court must then search for an inventive concept according to *Alice* step 2.

### (i) *Alice* Step 2

Having determined that the '864 patent is directed to an abstract idea, the court proceeds to the second step of the *Alice* test to determine whether the patent describes an inventive concept. *Alice*, 134 S. Ct. at 2357. For the implementation of an abstract idea on a computer to be considered patent-eligible, it must describe more than "well-understood, routine, and conventional activities previously known in the industry." *Alice*, 134 S. Ct. at 2359 (quoting *Mayo*, 132 S. Ct. at 1294 (internal quotations and brackets omitted)). The '864 patent claims implement the longstanding commercial practice of selling, gifting, and using gift certificates by using a generic computer and networking components in conventional ways. ('864 patent, col. 2:31-3:35, 10:50-11:64); *see also Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (acknowledging significant overlap between step 1 and step 2 of the *Alice* inquiry).

Coqui argues that "the '864 Patent offers a useful, non-conventional and non-generic arrangements [*sic*] of components and functionality . . . ." (D.I. 14 at 13) Next, Coqui argues that the language of claims 1 and 5 confines and narrows the scope of the '864 patent such that it does not preempt every application of the electronic gift certificate system idea. (D.I. 14 at 18) Finally, Coqui argues that claims 1 through 5 provide an inventive configuration of components

that solve problems associated with "conventional gift certificate circulation" like the requirement of being physically present to purchase a gift certificate and additional settlement processes. (*Id.* at 5, 14, 18) Defendants argue that the '864 patent claims are directed to "conventional computer and networking equipment performing routine and well-known functions." (D.I. 15 at 5)

The computer components described in the '864 patent are generic and function in conventional ways. Claim 1 involves a communication terminal, a service server, a database, and a network server. ('864 patent, cols. 10:54-11:12) The communication terminal is used as a "mobile user interface." (*Id.*, col. 4:2) The service server is used for "managing purchase, gifting, and usage operations." (*Id.*, col. 10:54-55) The database is used "for storing electronic gift certificate information." ('864 patent, col. 10:58-59) The network server is used for "transmitting . . . gift certificate information . . . to the communication terminal." (*Id.*, col. 11:1-4) These components, as described in the '864 patent, operate in their typical capacities in conventional ways and do not embody an inventive concept. The '864 patent does not specify precise devices that must be used in the method or provide any explanation about how the software solves a technological problem.

Coqui attempts to analogize the '864 patent claims to the claims at issue in *Bascom*. However, the patent at issue in *Bascom* is distinguishable from the '864 patent. *See Bascom*, 827 F.3d at 1345. In *Bascom*, the abstract concept was "the installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each user." *Id.* at 1350. The plaintiffs specifically articulated the new technical feature as "a filtering system . . . associating individual accounts with their own filtering scheme and elements while locating

the filtering system on an ISP server." *Id.* The location of the filtering software at the ISP server was an innovative concept in *Bascom* that pushed the patent at issue over the *Alice* step 2 threshold. *Id.* In contrast, the '864 patent language does not describe the order or combination of generic components in a non-generic arrangement, nor does it describe how the configuration of components is necessary to make the claimed method innovative. Coqui emphasizes that the '864 patented method includes a "unique database design," a "novel unique configuration," and a "unique system and method for circulating online gift certificates." (D.I. 14 at 1, 3, 4) Coqui quotes the claim 1 language verbatim and concludes that the claim is "aimed at creating a unique configuration for electronic gift certificates using a database on a computer." (D.I. 14 at 5) However, Coqui does not explain or argue that the arrangement of the components or some type of configuration unique to the '864 patent improves the functionality of a generic computer or solves a technical problem. *See Bascom*, 827 F.3d at 1350 ("[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.").

The application of barcodes, MMS messages, and devices with Internet access to a system comprising generic computing components for circulating electronic gift certificates is not an inventive concept. Similar to *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, the claims of the '864 patent "are not directed to specific details of the barcode or the equipment for generating and processing it." 873 F.3d at 910. The claims at issue in *Secured Mail* related to "communicat[ing] information about the mail object, i.e., the sender, recipient, and contents of the mail object." *Id.* "The use of barcodes was commonplace and conventional" well before 2009. *Id.* at 912. Similarly, short message service (SMS) and MMS message formats are

included in the '864 patent with the assumption that those with skill in the art would be familiar with these pre-existing formats. ('864 patent, col. 6:19-24)

The idea that the '864 patent improves the electronic gift certificate process by facilitating the purchase, usage, and gifting of certificates without requiring the customer to be physically present in the store is not an inventive concept. The claims at issue here do not solve a technological problem. Instead, the claims provide a conventional technological environment (i.e. computers and the Internet) in which to carry out the abstract idea of using electronic gift certificates. In *LendingTree, LLC v. Zillow, Inc.*, the patents at issue were directed to "a process for coordinating loans on a loan processing computer over the Internet." 656 Fed. Appx. 991, 992-93 (Fed. Cir. 2016). These patents were deemed abstract and patent-ineligible despite the fact that the goal of the invention was to "enabl[e] borrowers to avoid 'physically going to or calling each lender and filling out an application.'" *Id.* at 997. Similarly, the reduction in the amount of settlement processes required in the gift certificate circulation system is a byproduct of the advantages of computers and the Internet. *See, e.g., Bancorp Servs. LLC v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1279 (Fed. Cir. 2012) (reasoning that no innovative concept is achieved where "the computer simply performs more efficiently what could otherwise be accomplished manually").

Finally, Coqui argues that the claim elements in the '864 patent "narrow, confine, or otherwise tie down" the scope of the invention such that there is no risk of preempting the field of abstract ideas related to electronic gift certificate systems. (D.I. 14 at 17-18) Specifically, Coqui argues that the elements of independent claim 1 and dependent claim 5 eliminate the risk of preemption by requiring "the specific step of storing electronic gift certificate information

[on] the gift certificate database, whereby the database includes at least one of a gifting history of the gift certificates or a usage history of the gift certificates." (D.I. 14 at 18) In addition, Coqui highlights that dependent claim 5 requires that the "gift certificate information is classified by types, users, and prices of the gift certificates." (*Id.*)

In response, Defendants cite Federal Circuit case law stating that abstract ideas cannot be saved because they do not present a preemption risk. (D.I. 15 at 9). The law is well-established that claims directed to abstract ideas cannot be construed to be patent eligible merely because the invention fails to completely preempt the field. *Return Mail, Inc. v. United States Postal Service*, 868 F.3d 1350, 1370 (Fed. Cir. 2017). Resolution of preemption concerns are inherently addressed in the § 101 analysis. *Id.* (quoting *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015); *see also Alice*, 134 S. Ct. at 2354 (reasoning that preemption concerns motivate the implicit patentability exceptions of laws of nature, natural phenomena, and abstract ideas).

Consistent with the analysis above, all of the '864 patent claims are directed to the abstract idea of gifting, selling, and using gift certificates. Coqui's attempt to limit the '864 patented invention to the usage of a database to track gift certificate usage history does not make the overall claim language any less abstract. *See OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362-63 (Fed. Cir. 2015) (Just because "the claims do not preempt all price optimization or may be limited to price optimization in the e-commerce setting do[es] not make them any less abstract."). Similar to *OIP Technologies,* the '864 patent is no closer to achieving patent-eligibility under § 101 due to any lack of preemption concern.

## V. CONCLUSION

For the foregoing reasons, I recommend that the court grant defendants' motions to dismiss pursuant to Rule 12(b)(6). (C.A. No. 17-777, D.I. 9; C.A. No. 17-778, D.I. 9)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: November 16, 2018

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE